JOHN J. LINN vs. JONATHAN SCOTT — Appeal from Jackson County.

A land certificate gives to the person holding it no right to any particular land until the same is located *and surveyed* by the lawfully authorized surveyor.

A survey made by the surveyor of any other county than that in which the land lies is a nullity, and confers no right of action on the party holding it. [7 Tex. 76; 29 Tex. 508.]

A joint resolution of the legislature to validate the acts of certain officers is not available in a suit instituted previous to the passage of the resolution, although the act objected to was performed before the institution of the suit, unless it be expressed that it was intended to make evidence for suits then pending, and give a good cause of action where none existed before.

A right acquired by the plaintiff, after the institution of his suit, which is superior to that of the defendant, is not available to him unless he dismiss that suit and institute another founded upon the newly acquired right.

This is an action to try title. The suit was instituted by the appellee on the 21st of March, 1839, in the county of Victoria, and was subsequently removed to the county of Jackson by change of venue. The appellee claims title under an augmentation certificate granted to him on the 19th of January, 1838, by the board of land commissioners of Jackson county, and a survey made under that certificate by the surveyor of that county on the 10th of February, 1838. He sets out in his petition the boundaries of his survey, on the bank of the Lavaca river, "situated and lying in Victoria county," and states that he ordered the field notes of said survey "to be returned to the general land office, which was done, but the commissioner, John P. Borden, of the said general land office, returned the same, refusing to receive them, upon the ground that the land was claimed by one John J. Linn, and the field notes of an ancient survey of said land was then in the office of said commissioner." He alleges that the land was never surveyed for said Linn by the proper authorities, and if said Linn has such survey as he pretends, he prays that the court will order and direct him to produce the original field notes and such other papers as may pertain to his pretended title. He further alleges "that a survey and field notes were made for Sylvester DeLeon previous to the establishment of the Republic of Texas, and that the said DeLeon was ordered

from the land, and the commissioner under the Mexican government was directed not to issue title for said land to said DeLeon, this being the only survey made by the Mexican authorities for the land in controversy;" and he alleges that the survey was made for him (the petitioner) by the surveyor of Jackson county, because congress passed a law declaring six miles west of the Lavaca river to be a part and parcel of Jackson county. He prays that Linn may be cited to appear and answer, and that an injunction may issue to restrain the commissioner of the general land office from all further proceedings until the case can be investigated, etc.

The appellant answered on the 21st of April, 1840. He sets up title in himself as follows: He alleges that the land in controversy was surveyed in the month of January, 1833, for Sylvester DeLeon by James Kerr, the deputy of Jose Ma. Jesus Carabahal, by the authority of the commissioner, Fernando DeLeon; that Sylvester DeLeon became dissatisfied with this selection, and, twelve or fourteen months after the survey was made, was permitted, by the commissioner, to relinquish it and select other lands in lieu of it; that the commissioner instructed the deputy surveyor, Kerr, to make out the field notes of the survey for him (the appellant) as his headright as a colonist, and that he paid to the principal surveyor, Carabahal, the fees for surveying the land; that he obtained a certificate from the board of land commissioners of Victoria county in February, 1838, "certifying that he was entitled to a league and labor of land as a colonist, which, together with the field notes and order of survey to the land aforesaid, are now on file in the general land office;" that the "land was not, nor is now, nor was it ever included in the boundaries of Jackson county, and that the certificate issued by the board of land commissioners for the county of Jackson to the plaintiff, Jonathan Scott (the appellee), under which the aforesaid land was surveyed, is illegal, and that if the land had been entirely vacant, a patent could not issue to said Scott." He denies having purchased the field notes from Sylvester DeLeon.

The plaintiff (appellee in this court), on the 23d of April, 1841, filed a replication to the answer, in which, among other things, he denies that the said DeLeon, under whom the said Linn pretends to claim, was empresario or commissioner clothed with authority to confer upon him, the said Linn, the right he pretends to claim, or that Carabahal was principal, or James Kerr deputy surveyor for DeLeon's colony, and calls for proof. He denies that a survey was made for Sylvester DeLeon according to law, and that it was transferred to Linn, and calls for proof, and requires him to file his order of survey and field notes in court. He denies that he (Linn) obtained a certificate according to the requisition of the laws of Texas, and requires proof by filing the same in court; and he alleges that, if Linn "ever had any honest and legal pretense to the aforesaid land," he "forfeited the same by refusing to participate in the revolutionary struggle between Texas and Mexico in the year 1836, and abandoning his country, or rather fleeing from Texas and leaving his family under the protection of the DeLeon family."

At the same term at which this replication was filed, a motion was made by the attorney for defendant to reject it, which motion was sustained by the court on the ground that it was superfluous, unnecessary, irrelevant and illegal; and where pertinent, already involved by the petition and answer; to which decision the plaintiff excepted.

At the trial the plaintiff read in evidence a certificate issued to him by the board of land commissioners of Jackson county, on the 19th of January, 1838, for three-quarters of a league and one labor of land, and the certificate of the clerk of the county court that the same had been recommended by the investigating board for patent. He also read in evidence the field notes of a survey made on the 10th of February, 1838, on the west side of the Lavaca river, by Thomas Simons, surveyor of Jackson county, by virtue of that certificate, and a receipt for the payment of the land dues; and also the field notes of a survey of the same land, made under the same certificate, on the 15th of September, 1841, by the surveyor of Victoria county. He proved the correctness of his field notes; that he

settled the land in the fall of 1837; had resided several years upon it; had put more than four acres in cultivation; and that it was now claimed by the defendant, Linn.

The defendant read in evidence the answers of Thomas Wm. Ward, commissioner of the general land office, taken by interrogatories, who stated that he did not know what the ancient records of the Mexican government were in relation to the headright of the defendant, John J. Linn, as he had no such records in his possession or keeping, except the evidence of the surveyor of DeLeon's colony, a copy of which, and other documents on file in the general land office in relation to the headright of John J. Linn, he attached to his answers marked "A," with the seal of the general land office.

The documents attached to the answers of the commissioner, and referred to above, are: 1st. The affidavit of John M'Henry, one of the associate members of the board of land commissioners of Victoria county. 2d. The affidavit of James Kerr (deputy surveyor of DeLeon's colony), made before the said board of land commissioners on the 19th of February, 1838. 3d. The receipt of Carabahal, principal surveyor, for the fees for surveying one league of land for John J. Linn, on the Lavaca river, "known as the Baranca Colorado League," dated January 11, 1835. 4th. The affidavit of Sylvanus Hatch, made before the board of land commissioners of Victoria, on the 1st of March, 1838. 5th. A copy of the certificate granted by the said board to John J. Linn, on the 19th of February, 1838, and which is in the following words: "No. 5. This is to certify that John J. Linn has appeared before us, the board of land commissioners for the county of Victoria, and proved according to law that he arrived in this republic in the year 1830, and that he is a married man, and entitled to one league and labor of land upon the condition of paying at the rate of $3.50 for every labor of irrigable land, $2.50 for every labor of temporal or arable land, and $1.20 for every labor of pasture land which may be contained in the survey secured to him by this certificate.

"The said John J. Linn presented the field notes of the sur-

-vey of a league of land on the west bank of Lavaca river, known as the Baranco Colorado, or Quartel league; the said survey was made by James Kerr for Sylvester DeLeon, in compliance with an order of the commissioner, Fernando DeLeon. From the testimony presented to us, it appears Sylvester De-Leon relinquished the above mentioned survey and obtained another, situated on the Guadaloupe river, and that the said John J. Linn then procured from the commissioner, the acting empresario, and also the principal surveyor of the colony, Jose M. J. Carabahal, an order directed to James Kerr, the deputy surveyor, to make out the plot and field notes of the said survey on the Lavaca for him, the said John J. Linn, as his headright. Given under our hands, this 19th day of February, 1838.                  "JOHN McHENRY,
                              "ARTHUR BURNS,
                              "*Associate Commissioners.*"
"OSCAR FARISH.

And 6th. A copy of the field notes of a survey purporting to have been made for John J. Linn, on the southwest bank of the Lavaca river, signed James Kerr, dated 3d January, 1838, and certified as follows: "I certify that the within survey is true, correct. Houston, March 7, 1838. (Signed) Edward Linn, Surveyor for Victoria County;" and a receipt in the following words: "Received of Mr. John J. Linn the sum of forty dollars and eighty cents, being the amount due on this league of land. Victoria. February 19, 1838. (Signed) Edward Linn, President."

From the statement of facts, it appears that all the foregoing copies of documents sent by the commissioner as part of his answers to the interrogatories were rejected by the court as evidence, except numbers five and six, being the certificate issued to Linn in 1838, and the field notes of the survey made in 1833, and the indorsements thereon. These last were read in evidence by the defendant. The defendant then proved by James Kerr that he was the deputy surveyor of DeLeon's colony; that the land in controversy was surveyed for Sylvester

DeLeon, who, becoming dissatisfied, gave it up, and received other lands. That one Dimit then applied for it, but the commissioner refused, saying that Dimit had received favors enough, and that, if anybody except a Mexican got the land, it should be Linn. That he, witness, was afterwards directed by Carabahal, the principal surveyor, to make out the field notes for Linn; and, in a conversation with the commissioner, he understood that he assented thereto, but did not remember that he gave a special order to that effect. There was no written order of survey. Witness did not recollect whether he struck the name of Sylvester DeLeon out of the original field notes and inserted that of Linn, or made out a copy of them in the name of Linn. No survey was made for Linn. It was the practice in the colony to give verbal orders of survey, and, after the field notes were returned, to embody in the deed the formalities of petition, order of survey, etc.

There was a verdict and judgment for plaintiff, and the defendant appealed.

Howard for appellant.

1. It is clear that the order of survey and survey, made to Linn in 1833, vested in him, if not the absolute fee, at least the equity, which could not be divested by subsequent locations. After the land was abandoned by the person for whom it was first surveyed, it was open to location for Linn. The proof is sufficient that it was surveyed for him in satisfaction of his headright, by the direction of the commissioner and principal surveyor. This would separate the land from the public domain. 1 Binney, 227; id. 246.

2. The direction of the survey by the principal surveyor, which is proved by the deputy, is sufficient proof of the existence of a valid order, where the survey was actually made. Taylor vs. Brown, 5 Cranch, 234; 2 Pet. Con. 235; Elmendorff vs. Taylor, 10 Wheat. 152; 6 Cond. 47. It is not competent for the surveyor to contradict his return. Barclay vs. Howell, 6 Pet. 504.

3. In February, 1838, Linn's title was confirmed by the

board of land commissioners for Victoria county, which judgment recites the citizenship of the claimant; that he was a married man and head of a family, and entitled to one league of land; that the claimant had a legal survey made in pursuance of an order granted by the commissioner and principal surveyor. It was in fact the judgment of a court of competent jurisdiction in favor of the validity of Linn's title. The record cannot be contradicted. But whether it be a judicial or a ministerial act, it was the decision of the tribunal to which the law had confined the jurisdiction of the subject matter, and their decision is final and conclusive. The judgment was not only conclusive as to the right of the republic to the land, but it related back so as to confirm the previous equity of Linn, if any such confirmation was necessary. Martin *vs.* Mott, 12 Wh. 19; 1 Pet. 658; 8 Pet. 445, 451; 9 Pet. 742; sections 20 and 25, Land Laws of Texas, Dec. 14, 1837, p. 70, and last clause of sec. 19, Const. Republic of Texas; second clause, 10th section of General Provisions.

4. The confirmation of Linn's title by the board of land commissioners was made previous to the time that Scott had made any location. The location first relied on was made through the surveyor of Jackson county of lands lying in Victoria county. It was therefore void for want of the power in the officer. It was a usurpation of authority. The law gave him no right, under any circumstances, to act in the premises. The appellee seems to have been aware of this, for after the confirmation of Linn's title and during the progress of the suit, he relocated the land in the county of Victoria. It is obvious that this will not aid him, because Linn's rights had already previously accrued, even if he could go no further back than the action of the land commissioners. The act of a surveyor out of his district can have no more validity than the act of a sheriff out of his county. Gordon *vs.* Kerr, 1 Wash. C. C. R. 322; Arredondo's Case, 6 Peters; General Land Law Texas, sec. 17.

5. The act of the legislature confirming surveys in Victoria county, if such there be, could not, under the constitution,

operate to divest a previously vested right. It could have no
effect otherwise than a relinquishment of the claim of the
government to lands vacant at the time of the passage of the
act.   If it went beyond this, it would divest a vested right as
well as impair the obligation of a contract.   Subsequent en-
tries are not good, either with or without notice [Stringer vs.
Young, 3 Pet. 337]; a change of government does not affect
rights either inchoate or complete [Soulard vs. United States,
4 Pet. 511; 9 Pet. 224; 7 Pet. 51]; in either case they are
property which the new government is bound to respect, and
which the constitution and laws of Texas guarantee.

6. The lands, when surveyed for Linn, were as completely
withdrawn from the public domain as land patented. 1 Pet. 638.

NEILL on the same side.

WEBB for appellee.

There can be no controversy as to the fact of the appellee's
certificate, location and survey being prior in date to the ap-
pellant's, unless the order of the surveyor of DeLeon's colony
to his deputy, to give the field notes of the survey made for
Sylvester DeLeon to the appellant, be equivalent in law to an
"*order of survey legally obtained by a citizen of the repub-
lic from a legally authorized commissioner prior to the act
of the consultation closing the land offices.*"   See 10 General
Prov. Constitution of the Republic of Texas.

The grant of the certificate to Scott by the board of Jack-
son county is evidence that he was entitled to receive it *in that
county*.   The subsequent action of the board of investigating
commissioners confirmed it.   It was, *after their action*, no
longer an open question.   1 Peters' R. 655; 3 Wheat. 246,
315; 6 Wheat. 109; Cox, 408, secs. 23, 25, 26; 2 Peters, 449; 2
Howard U. S. R. 319; Sutherland vs. DeLeon, 1 Texas R. 250.

The act of the 29th of December, 1837, extending the line
of Jackson county to six miles west of the Lavaca river, meets
the objection that the survey was made by the surveyor of
Jackson.   Laws 1837, p. 121.

This act, *ipso facto*, extended the limits of Jackson county to
an extent that embraced the land in controversy until the elec-

·tion contemplated by the act should be held. The people within the limits of the tract taken from Victoria and added to Jackson had the right to dissent from the change, but until that dissent was expressed by an election, the change was, to all intents and purposes, made *by the act*. The survey for Scott was made after the passage of the act, and before any dissent was expressed (if indeed any ever was expressed). No other surveyor during that time had a right to make the survey.

But if any doubt upon this subject existed previously, that ·doubt was removed by the act of February 5, 1840. This last act legalized all surveys made by the surveyor of Jackson ·county on the west side of the Lavaca, and within six miles·of :the same, which did not conflict with surveys made by the surveyor *of Victoria county*. 4 vol. Laws, p. 249.

This land never was surveyed by the "*surveyor of Victoria county*," except for Scott in 1841. There is no pretense that the surveyor of *that county* ever surveyed it for Linn; consequently there was no conflict between the surveyors of the two ·counties in respect to it.

The appellant has shown no "order of survey legally obtained .from any legally authorized commissioner, prior to the act of ·the consultation closing the land offices." Indeed, he has not proved that any order of survey *in his favor* ever existed. He has simply proved that the surveyor of DeLeon's colony verbally directed his deputy to make out for him the field notes of the survey previously made for Sylvester DeLeon, and that the .deputy understood it was with the assent of the commissioner. This is surely not such an order of survey as is contemplated ·by the constitution and land law of 1837. See sec. 12, Land :Law 1837, p. 66; Laws of Coahuila and Texas, p. 73, art. 26.

So much of the certificate of the board of commissioners of Victoria county, issued to Linn on the 19th of February, 1838, ·as relates to the field notes, or order of survey mentioned therein, is wholly void, because in giving it, the commissioners assumed a jurisdiction not conferred upon them by law. Their province was simply to decide as to the quantity of land to which an applicant was entitled, and, having performed that

duty, their powers were at an end. It was the duty of the commissioner to decide upon the legality of the previous order of survey, and of the survey made under it. Land Law 1837, sec. 20, p. 70; 6 Peters' R. 729.

That portion of the certificate is not good, even as evidence of the facts which it pretends to recite, because it is not the best evidence of those facts.

The certificate of Linn, as presented in the record, does not even confer on him the right to make a location and survey under it. It is not averred, nor does the record show, that it was recommended by the board of investigating commissioners, and without that it was a nullity. 4 vol. Laws, 136, 161.

DENNISON on the same side.

Opinion of the court delivered by Mr. Justice LIPSCOMB.

This was a suit brought by the appellee to try title, and to recover three-quarters of a league and a labor of land in the county of Victoria. The venue was afterwards changed to the county of Jackson.

The plaintiff in the court below claimed title under an augmentation certificate, for three-quarters of a league and a labor, in consequence of his marriage. His certificate bore date January 19, 1838. The land in controversy was located and surveyed by the surveyor for the county of Jackson, 10th February, 1838. The same certificate was again located on the same land and surveyed by the surveyor for the county of Victoria, the county in which the land lay, on the 15th September, 1841.

The defendant claimed title by virtue of a headright order of survey, and the field notes of a survey of one league, awarded to him as a colonist, prior to the revolution, and the closing of the different land offices by order of the consultation. The certificate of his right was issued to him by the board of land commissioners for the county of Victoria, on the 19th of February, 1838. The petition prayed for an injunction against the commissioner of the general land office, to enjoin him from issuing a patent to Linn, the defendant, and for a *mandamus*, etc.

The petitioner stated that he had ordered the field notes of his survey of the said land to be returned to the general land office, which was done; but the commissioner, John P. Borden, of the said general land office, returned the same, refusing to receive them, upon the ground that the said land, as above described, was claimed by one John J. Linn, and the field notes of an ancient survey of the said land was then in the office of said commissioner. This is all of the matter set forth in the petition, under the view that we shall take of the case, tha'. can be material to be stated.

There was a verdict and judgment for the plaintiff, from which the defendant appealed. There was a good deal of testimony on both sides, but, from the opinion of the court on a preliminary question, it will not be important to examine it.

The suit was commenced 21st March, 1839, and the petitioner, or plaintiff, at that time, had no right under his certificate except such as the location and survey made for him by the county surveyor of Jackson county; and his petition shows that the land so surveyed is in the county of Victoria. Now it is very clear that the survey must be made by the surveyor of the county in which the land lies. The survey of the surveyor of any other county was a nullity, and could confer no right of action on the plaintiff.

But it is contended that the resolution of the 5th February, 1840, p. 249 of the acts of that congress, gives effect and validity to the surveys made by the surveyor of Jackson county within six miles of the west bank of the river Lavaca. The joint resolution is as follows: "That all surveys made by the surveyor of Jackson county on the west side of the Lavaca, within six miles of the same, shall be as legal and valid as if the same had been done by the surveyor of Victoria county, provided such surveys do not conflict with the surveys made by the surveyor of Victoria county." There are several objections to this resolution being made available in this case. It was passed after the commencement of this suit, and it cannot be presumed, unless it had been so expressed, that it was intended to make evidence for suits then pending, and to give a

good cause of action when none before existed. It is apparent that it would conflict with the rights of the defendant, known to the plaintiff before the commencement of this suit, as will be apparent by reference to a part of the petition cited above; and further, it appears from the statement of the facts that Linn had, before returning his field notes to the general land office, submitted them to the examination of the surveyor of Victoria, and he had certified their correctness and his approval of them to the commissioner of the general land office. This, then, in effect, was making it his survey, and it would be repugnant to the survey made by the surveyor of Jackson. This was done before the commencement of the suit, because the plaintiff in his petition states as a reason why the commissioner of the general land office returned his field notes, the fact of Linn's, for the same land, being in the office at the time.

It is very clear, from the proviso to the joint resolution cited, that it was not intended to affect the adverse rights of other persons. If there was no adverse interest, then the survey so made was good and valid. Nor is it believed that the subsequent location with and survey made by the surveyor of the county of Victoria, can be invoked to the aid of the plaintiff's right to sue in this case, because it was done after the commencement of the suit, and showed no legal right in him when he sued the defendant. If this last location and survey gave the plaintiff a right superior to the defendant's, it would only be made available to him by dismissing this suit and commencing one founded on such right. The plaintiff had no legal right or title given by the location with and the survey made by the surveyor of Jackson county. If he has any now, it is by the location and survey made by the surveyor of Victoria county, and this is inadmissible in this suit, because it accrued after its commencement. It is not analogous to making legal evidence in support of a previous right; this, perhaps, would be only affecting the remedy. But the location and survey gives the right to the land; the certificate, previous to such location, gave no title. The objections we have noticed are apparent in the recorded petition of the plaintiff,

and are believed to be of so grave a character as should have forbidden a judgment in favor of the plaintiff, because they show at the commencement of the suit he had no cause of action. The judgment is reversed and the cause dismissed.

Judge WHEELER gave no opinion in this case.