Lipscobib, J.
Whether the appellant,’ as an assignee of a conditional certificate, has acquired any right at all is a question of grave import to a large class of claims in this Slate, and should not be decided without the most thorough investigation and mature deliberation. It is not, however, believed that the ease rests on that question; and in tile absence of some books that ought to be consulted, we have concluded that it is not proper at this time to decide that question. It will probably arise in some other case, under circumstances more favorable to a correct conclusion.
The appellant rests his location and survey on the acts done by Jesse Cherry. If lie liad no authority to receive the file of the certificate and survey the laud designated, (lie appellant can derive no right from the survey or location. It is manifest from the evidence that Cherry was not appointed deputy surveyor for Hie county at large, but was confined toa particular subdivision, within which he was authorized to receive certificates and make surveys. His bond for the faithful discharge of his duties as deputy surveyor defined the district of country to which his authority was limited. His securities were not bound for anything he might do outside of those limits; and if it was competent for the surveyor to limit the authority of his deputy, it was certainly done in the appointment of Cherry.
The act of the Congress of the Ecpublic of 14th December, 1S37, (section !), art. 1845, Gart. Dig.,) provides for tiie appointment of’a county surveyor. It gives him authority to appoint as many deputy surveyors as he shall deem necessary for the county, and shall administer to them the oath of office, and take a bond to be approved by himself for the faithful discharge of the duties of (heir office. He shall furnish them such instructions as may be furnished to him from time to time by the Commissioner of the General Land Office. That instructions were given by the Commissioner of the General Land Office directing the county surveyor to set apart particular sections of their counties for the separate work of each deputy surveyor, beyond which limits they were not allowed to perform tlie duties of a deputy, is proven by the answer of Seidekum, not impeached or controverted. It appears that such instructions were issued by the Commissioner of the General Land Office to the surveyors from (lie records of another suit in this court, not between tlie same parlies or privies, hut we feel ourselves authorized to look to it for the purpose of *275 ascertaining what those instructions wore, in confirmation of the facts proven by Seideknm, in relation to his having received instructions and acted in accordance with them. These instructions seem to have been issuec by way of a circular letter to (lie surveyors. The one we, copy from was' add'.cssed to the county surveyor of Nacogdoches county, and is as follows : “Having been informed that in some counties difficulties have arisen in regard to the application for surveys of the same land by dill'erent persons, in consequence of the pian adopted by the county surveyors, I consider it to be my duty to give you some general instructions upon that subject, and I trust you will particularly respect them.
“You will assign to each deputy surveyor a portion of your county, in which no other will be allowed to survey. Each deputy will keep a small book, in which lie, will note the names of the persons applying to him for surveying, the date of the application, and, so far as possible, (he precise location of the land, hut in no case whatever to make said entry without taking into his possession tlie corresponding certificate. The district, assigned to eacli deputy surveyor should be described, so far as circumstances will permit, by natural boundaries. Each certificate upon which land lias been surveyed in your county must be returned to you with the field-notes, all of which being examined,” &e., (the remaining part of the instructions not material.)
There can he nd doubt that in point of fact the instructions were given to the surveyors to confine each deputy to his own particular district set apart to him, and there can he as little doubt that those instructions were obligatory on the surveyors under the statute cited above. The conclusion resulting from the views expressed is that the survey relied on by the appellant being made by Cherry out of the limits prescribed to him, lie was no more a deputy for that work than if it luid been made out of the county; that it was wholly void; and it is certainly so, it not having received the approval of the surveyor of the county, it may be said to'be a hardship on the appellant that he should sniier from his ignorance of the extent of the powers of the person ho thought legally authorized to act; hut his negligence in not seeking correct information from the best sources is the main cause of his misfortune. The bond of the person lie applied to to do his work would have informed him of a want of authority in the person to whom he applied, as it defined the limits within which lie was authorized to act as a deputy surveyor; or he might have applied to the surveyor of the county himself for information. Misfortunes resulting from one’s own negligence can with no propriety be ascribed either to a defect in the law or in their'clue administration.
Believing, as we do, that the judgment of the court below must be affirmed, because the location was made with a person not authorized to receive it, and surveyed without authority derived from the county surveyor, and, not having received his approval, that it was entirely void, we might stop here;' hut, another objection was taken to the appellant’s location anil survey by the counsel for the appellee and pressed upon our consideration; it is therefore not deemed improper that it should he examined.
It was contended that under the provisions of the act of the 5th February, 1840, (Hart. Dig., p. 619.) the location and survey made by virtue of the appellant’s certificate were void, because the certificate was not authenticated by the clerk of the County Court nor by the Commissioner of the General Land Office to he a genuine and legal claim' against the Government of Texas. This statute was not discussed in the opinion delivered in the ease of Hughes v. Lane at the present term. It was not material to give it a construction 'in that ease, from the facts presented by the record. The suit was brought on a certificate. and survey under it of the first-class of certificates, and it was not alleged nor proven that (he certificate had been recommended as genuine by (ho traveling board of commissioners appointed to detect fraudulent land *276 certificates. This objection would have been fatal to the action if the statute of the 5th February, 1840, above referred to, had not been in existence. The muit was therefore not ciillod upon to give a construction to the statute. If ii. f.at case it had beén averred and proven that the certificate had been< recommenced by the traveling board, a question might have been raised whether ine survey was not void for want of the authentication accompanying’ the certificate when it was filed, under the second section of the act of 1840, (art. 1984, Hart. Dig.:) “ That any survey made contrary to the meaning and intent of this act. shall bo null and void.” In construing this section the court would necessarily have taken the whole law together for the purpose of determining whether the title of the locator was to be void or only the survey void, and for which the surveyor was responsible. The whole object of the statute seems to ljave been to prevent the surveyor from acting on a certificate without the most positive assurance that it was genuine and legal, and a heavy penalty is imposed on him for the violation of its provisions.
Tlie first section of the act makes it unlawful for any comity or deputy surveyor to locate any certificate for land, or to survey any land, for any person or persons holding a certificate, unless the same be certified under the hand and seal of the County Court clerk of the county where the certificate was issued or of the county where it is proposed to be located, orbe certified under the hand and seal of the Commissioner of the General Land Office that the same has been reported by the commissioners appointed under an act of Congress to detect fraudulent land certificates, &c., passed January, 1840, as a genuine and legal claim against the Government of Texas; and any surveyor offending against the true intent and meaning of this act shall be deemed guilty of a high misdemeanor, and on conviction thereof before a District Court shall be removed from office and fined in a sum not more than five thousand dollars, at the discretion of the court. The second section lias been already recited. The third and last makes it the duty of the Commissioner of the General Land Office, as soon after lie receives the return of the traveling board of commissioners as possible, to transmit to the County Court clerk of each county in the Republic a full and true copy of the returns made from the several counties. Under the first section the question will arise whether the locator of a certificate that is genuine and legal forfeits his location although the surveyor himself is prohibited from making a location, as it has been seen that the second section, in making the survey null and void, is silent as to the location. And again, it is not absolutely clear that there would be a forfeiture of the survey until a conviction under the statute; and further, whether, (he fact that the surveyor had subjected himself to a penalty and had violated the law could be inquired into in a suit not having that object directly in view. The statute is not clear as to what is to be doné with the certificate of authentication, whether to be preserved or in what way; and it is certain that the most stringent construction would not require that it should bo indorsed on the claimant’s certificate. Would not the presumption of law be that the surveyor had received the authentication required by the statute, although it did not appear on the certificate? In a ease where the surveying had been done by a deputy, and it had been approved by the principal surveyor, it would seem that the presumption that the deputy had not acted in violation of the law ought to be conclusive in favor of the holder of the certificate, if it was a legal and genuine claim. We give no opinion on these questions because they are not presented by tire case before us, but we believe that their importance fully justifies the throwing out these suggestions for the consideration of the profession and those interested in their satisfactory solution.
To return to the ease before us, (he certificate under which Peacock, the appellant, claimed title is a conditional certificate of the third class. It was from those of the first class the mischief mainly, if not entirely, arose, that called forth from the Legislature the act to detect fraudulent land certificates; and it is doubted whether in the whole history of that stupendous scheme of *277 fraud a single case oí a second-class certificate was ever brought "vUbin its dark and corrupt sphere of operation. It is, however, possible th&wkey; some frauds may have been perpetrated by the fabrication of these certificates ox the second class, that purported to be unconditional, having matured frcm a conditional •to an unconditional certificate, as there was sufficient time from the passage of the law under which the second class was allowed; and it ;r.ay, therefore, have been considered by the Legislature necessary to be guarded against. We are, however, well satisfied that the third class does not come witmr. either the mischief or within a fair and sensible construction of the statute. .From the date of the passage of the law none of the third class could have matured úico unconditional certificates; and to contend that they were intended to be operated on by the statute would be absurd, because it would be making it operate on a certificate issued after the board of traveling commissioners hail been fits' solved. The appellant’s certificate was of the third class, and was not subject to the examination of the traveling board of commissioners. On the grounds first discussed, the judgment is affirmed.
Judgment affirmed.