# John Airey, Appellant, v. Mary Ann Kunkle.

*Deeds—Contradictory descriptions of land conveyed—Calls for adjoiners.*
Where land is described by courses and distances and also by calls for
adjoiners, the latter, where there is discrepancy, invariably governs.

*Deeds—Contradictory description of land conveyed—How construed.*
It is a rule of construction that as soon as there is an adequate and suf-
ficient definition with convenient certainty of what is intended to pass by
a particular instrument, a subsequent erroneous addition will not vitiate it.

Where, therefore, two deeds to different grantees for adjoining lots
fronting on a certain street described the lots of a certain width, extend-
ing of that width between parallel lines at right angles with said street;
and it appeared by reason of a prior sale by the common grantor that the
effect of making them parallel lines at right angles with the street would
be to narrow one of the lots over six feet at one end, it was held that the
words "at right angles with the street" must be in law stricken from
both deeds, it being plain that the true intent of the description was to give
lots of the same width at each end between parallel lines.

*Construction of deed by acts of parties—Erection of division fence.*
Where the owners of the adjoining lots, conveyed by the deeds, erected
a division fence, which stood undisturbed for sixteen years, and was in
harmony with a construction of the deeds which ignored the lines called
for by the deed as at right angles with the street, but preserved the equal
width of the lots at each end; this was a contemporaneous construction of
the description of the lots by the parties themselves not without weight.

*Title by estoppel—When inapplicable—Particular circumstances.*
There can be no title acquired by estoppel where the party claiming
thereby has apparently suffered no injury, but holds all the land which he
had bought.

Nor can a party claim title by estoppel under the very person whose
error is averred to have given rise to the estoppel.

Argued Oct. 5, 1897.    Appeal, No. 182, Nov. T., 1896, by
plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T.,
1895, No. 1247, in favor of defendant on case stated.    Before
RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH
and PORTER, JJ.    Affirmed.

Case stated.    Before SULZBERGER, J.

The facts sufficiently appear in the opinion of the court be-
low:

The plaintiff, John Airey, claims title to a triangular piece of ground, beginning at a point on the west side of Forty-eighth street, at the distance of $240\frac{68}{100}$ feet south of Westminster avenue, thence running southwest by a line parallel to Westminster avenue 129 feet, thence north 6 feet $3\frac{7}{8}$ inches to a point, and thence east by a line at right angles to Forty-eighth street to a place of beginning.

(See diagram.)

The defendant denies the plaintiff's right and claims title in her.

The dispute arose as follows:

On November 20, 1894, Lewis Fodell conveyed to the plain-

tiff five contiguous lots on the west side of Forty-eighth street, at the respective distances of 243 feet $8\frac{1}{10}$ inches, 259 feet $8\frac{1}{10}$ inches, 275 feet $8\frac{1}{10}$ inches, 290 feet $8\frac{1}{10}$ inches and 305 feet $8\frac{1}{10}$ inches southward from the south side of Westminster avenue; the first two mentioned lots each containing in front on Forty-eighth street 16 feet, and extending of that width westward, between parallel lines at right angles to Forty-eight street, 112 feet to the center of a 4 feet wide alley, leading northward into a certain 3 feet wide alley which extends eastward into Forty-eighth street. Also, five contiguous lots or pieces of ground, situate on the east side of Fallon or Forty-eighth-and-one-half street at the respective distances of 243 feet, $11\frac{3}{4}$ inches, 257 feet $11\frac{3}{4}$ inches, 271 feet $11\frac{3}{4}$ inches, 285 feet $11\frac{3}{4}$ inches and 299 feet $11\frac{3}{4}$ inches southward from the south side of Westminster avenue, each lot being 14 feet front, and extending of that width in length or depth eastward, between parallel lines at right angles to Fallon street, 85 feet to the center of the aforenamed 4 feet alley leading into the aforementioned 3 feet alley, together with the right of the alleys.

Fodell had taken title to this property on the same day from Robert Anderson. Robert Anderson derived title from John Maginnis, and the latter from the Fidelity Insurance, Trust and Safe Deposit Company, trustees under the will of William Howell, deceased. The title of the Fidelity Company, trustees, was obtained on March 11, 1893, by a purchase at sheriff's sale for arrears of ground rent of a lot that had been sold on ground rent to Frederick Arleth, on September 14, 1874, by the said William Howell in his lifetime. The plaintiff, in order to win, must show that the triangular lot in question belonged to Frederick Arleth.

The agreed facts on this subject are that, on September 14, 1874, William Howell conveyed two tracts of land, one to Henry Schmid, and the other to Frederick Arleth. The grant to Henry Schmid was situate on the west side of Forty-eighth street, $200\frac{68}{100}$ feet south of Westminster avenue; containing in front on Forty-eighth street 40 feet, and extending in depth westward of that width between parallel lines at right angles to Forty-eighth street 200 feet 11 inches, more or less, to Forty-eighth-and-one-half street; bounded on the north by ground of Frederick Schmid, east by Forty-eighth street, south by ground

granted this day to Frederick Arleth, west by Forty-eighth-and-one-half street. The grant to Frederick Arleth was situate on the west side of Forty-eighth street, $240\frac{68}{100}$ feet south of Westminster avenue; containing in front on Forty-eighth street 40 feet, and extending in length or depth of that breadth between parallel lines at right angles to said Forty-eighth street 200 feet 11 inches, more or less, to Forty-eighth-and-one-half street; bounded on the north by ground granted to Henry Schmid, east by Forty-eighth street, south by other ground of said William Howell, and west by said Forty-eighth-and-one-half street.

The scope of these two grants made on the same day is unmistakable. William Howell intended to and did convey to Henry Schmid and Frederick Arleth a lot 80 feet front on Forty-eighth street, and extending of that width between parallel lines to Forty-eighth-and-one-half street. Unfortunately, he described the north and south lines of these tracts as being at right angles with Forty-eighth street. In point of fact, he no longer owned the northernmost triangular piece of the lot as described by courses and distances, having previously, to wit: on September 15, 1873, a year before, sold it to Frederick Schmid, who, in the deed to Henry Schmid, is named as his northern adjoiner.

The deed of September 15, 1873, to Frederick Schmid was made under the following circumstances: William Howell was the owner of a lot of ground fronting on the south side of Westminster avenue, extending from Forty-eighth to Forty-eighth-and-one-half street, and extending along the last mentioned street more than 300 feet. He conveyed on that day to Frederick Schmid a lot, situate on the west side of Forty-eighth street, at a distance of $140\frac{68}{100}$ feet south of Westminster avenue; containing in front on Forty-eighth street 60 feet, and extending in length westward of that width between lines parallel with Westminster avenue 200 feet, more or less, to Forty-eighth-and-one-half street.

The corner of Forty-eighth street and Westminster avenue, instead of being a right angle, is slightly acute, so that a line beginning at the southern boundary of Frederick Schmid's lot on Forty-eighth street will, if extended westward at right angles to Forty-eighth street, come out at Forty-eighth-and-one-half

street at a point 6 feet 8⅜ inches north of a line beginning at the same point and made parallel to Westminster avenue.

The situation on September 14, 1874, was therefore as follows : Howell, by courses and distances, conveyed to Henry Schmid a little triangular lot, which unquestionably had belonged to Frederick Schmid for a whole year. By the call for adjoiners, however, he made the southern boundary of Frederick Schmid's land the northern boundary of Henry Schmid's. " Where land is described by courses and distances and also by calls for adjoiners, the latter, where there is a *discrepancy, invariably govern : " Cox v. Couch, 8 Pa. 147 ; Petts v. Gaw, 15 Pa. 218 ; Caldwell v. Holler, 40 Pa. 160 ; Thompson v. Kauffelt, 110 Pa. 209. In view of this discrepancy, what did Henry Schmid take ? A lot 40 by 200, or a lot gradually narrowing at the rear end to 33 feet 3⅝ inches ?

The intent of the grant to Henry Schmid is plain. The front is described as 40 feet ; it extends westward of that width between parallel lines. This is to say doubly that the rear end of the lot is just as wide as the front end. But the words are added, at right angles to Forty-eighth street, which are totally discrepant, and whose effect is to negative the previous description. The rule is that as soon as there is an adequate and sufficient definition, with convenient certainty of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it : Comyns' Digest, Fait E. 4 ; Broom's Legal Maxims, 630. By virtue of this principle the words " at right angles to Forty-eighth street " are in law stricken from the deed to Henry Schmid, and by a parity of reasoning the analogous words .disappear from the deed to Frederick Arleth. The true meaning of Howell's deeds of September 14, 1874, thus becomes plain. Howell being the owner of plenty of land to the south of both Henry Schmid's lot and Frederick Arleth's lot, Henry Schmid took 40 by 200 on lines parallel to Frederick Schmid's southern line, and therefore parallel to Westminster avenue, and Frederick Arleth took the lot immediately south of him, 40 by 200, on like parallel lines.

The triangular lot in dispute in this case was therefore the property of Henry Schmid, and Frederick Arleth never had

---

* 6 Dist. Rep. 4.

title to it.   The plaintiff who claims under Arleth is equally devoid of title.

The case stated admits a fact not without significance.   In 1877, when Henry Schmid and Frederick Arleth were in possession of their respective lots, the former erected a division fence between his and Arleth's lot, upon a line parallel to Westminster avenue, and hence including the triangular piece now claimed under the Arleth grant.   No question was raised regarding the same until about January 1, 1895, and the fence was in existence when the plaintiff purchased.   Thus it is seen that during the period of more than sixteen years during which Arleth held, he never questioned the correctness of the fence line.   While this, of course, gives no title by prescription, it may not be altogether ineffective in establishing a contemporaneous construction of the limit of the lot by the parties themselves: Province v. Crow, 70 Pa. 199.

Against this reasoning, the plaintiff answers that, on December 15, 1880, Howell, the original grantor to both Schmid and Arleth, purchased back at sheriff's sale Henry Schmid's lot, and that by virtue of that purchase the triangular lot in question became in law the property of Arleth.

The process by which Arleth acquired this title is supposed to be by the estoppel of William Howell, who had made the error in the deed as against Frederick Arleth, who suffered by the mistake.   This assumes, however, that Frederick Arleth had suffered.   We cannot see how he was injured.   According to our exposition of his deed, both his northern and southern boundaries were parallel to Westminster avenue, and he was thus entitled to a lot 40 by 200 feet, which is exactly what he bought.   There is not a line in the case stated to indicate that he did not get this in full.   If the doctrine of estoppel was good as against William Howell in 1880, when he by a casualty bought in Henry Schmid's lot, it was at least as good on September 14, 1874, when the deed was made, or in 1877, when the fence was built, at both of which periods he was the owner of plenty of land to the south of Arleth, wherewith to make good his grant.

And if the plaintiff's predecessor, Arleth, remain passive after 1883, when Howell had again become his northern adjoiner, how can Howell and his grantees, who succeeded to Arleth's

right, complain that Arleth loses his right as against them on the south because he failed to assert it as against them on the north.  The plaintiff, in right of Howell, wishes to fasten upon Arleth and his grantee, the defendant, an equitable estoppel for acts done by Howell himself, and by which he suffered no injury whatever.

The plaintiff in this action of ejectment must win, if he win at all, on the strength of his own title, and minute criticism of his neighbor's right cannot help him.  The title he has shown is insufficient.

Let judgment be entered on the case stated for the defendant.

*Error assigned* was entering judgment for defendant on the case stated.

*Alex. Simpson, Jr.*, for appellant.—The original grants by Howell of the lots of appellant and appellee were executed the same day.  There was no monument or other mark on the ground to serve as a guide to either purchaser.  Each deed calls for a lot at right angles to 48th street.  In city lots of small frontage it is of importance that the line should be at right angles.

When appellant's predecessor bought he either did or did not know that appellee's predecessor was negotiating for the lot to the north.  As the case stated does not aver that he did know, it must be conclusively presumed that he did not: Berks Co. v. Pile, 18 Pa. 493.  If he did not know then he is not affected for he bought in the middle of a tract owned by his grantor.  If he did know then he was affected at most by notice of what the common line was.

It may be laid down as a rule of law and common sense alike, that where two contemporaneous grants of adjoining lands are made by a common grantor to different grantees, and no existing lines or monuments are referred to as the boundary between the two grants, then, so far as the grantees are concerned, the common line accurately described in the two grants will control each, irrespective of a possible conflict by either elsewhere with a third party.

That the unlawful doctrine of "give and take" has no applicability to such a case, without consent, is, in principle, estab-

lished by Breneiser v. Davis, 134 Pa. 1; Midland Mining Co. v. Coal Co., 136 Pa. 444. The fence not being mentioned in the deeds does not aid the description: Thompson v. Kauffeet, 110 Pa. 209.

*W. Horace Hepburn*, for appellee.

OPINION BY WICKHAM, J., March 21, 1898:

The simple solution of the at first- seemingly difficult questions, presented by this case, is found in the wise and well known rule of law that where in a conveyance there is a conflict between the adjoiners and the courses and distances, the former shall control. The application of this rule, fortified as it is by circumstances, referred to by the learned trial judge in his able and convincing opinion, necessarily led to the entry of judgment for the defendant on the case stated.

The ingenious argument of the plaintiff's counsel fails to satisfy us that any error has been committed, and as anything we might say would merely be an elaboration of what has been already sufficiently expressed in the opinion, further discussion is unnecessary.

Judgment affirmed.