## KIRBY LUMBER CO. v. GIBBS BROS. & CO. (No. 1581.)

Court of Civil Appeals of Texas. Beaumont.
Feb. 20, 1928.

Rehearing Denied Feb. 29, 1928.

1. Boundaries ☞54(1)—Senior survey, to be entitled to its full quota over adjoining overlapping survey, must be valid.

Where adjoining surveys having their south lines on a straight line overlap, so that there is a shortage of quantity of land, the senior survey, as determined by the respective dates of surveys, gets its full quota only if such survey is valid, in being made according to law by some one authorized to make it.

2. Boundaries ☞54(1)—Surveys made by surveyors of county other than that in which lands were situated were void (1 Gammell's Laws, p. 1406, § 9; Paschal's Dig. art. 4522).

Under 1 Gammell's Laws, p. 1406, § 9, and Paschal's Dig. art. 4522, requiring land to be surveyed by a surveyor of the county in which land is situated, surveys made by surveyors of another county were void, and did not amount to an appropriation of the land under the certificates by virtue of which they were made.

3. Boundaries ☞54(1)—Seniority as between two surveys held determinable by dates of issuance of patents, not by dates of void surveys on which patents issued (1 Gammell's Laws, p. 1406, § 9; Paschal's Dig. art. 4522).

Where patents were issued on surveys which were void under 1 Gammell's Laws, p. 1406, § 9, and Paschal's Dig. art. 4522, because not made by surveyors of the county in which lands were situated, state thereby ratified and adopted such surveys, and the first patent issued constituted the senior survey, and was entitled to its full quota as against subsequent patent issued on overlapping survey, regardless of dates of actual surveys.

4. Appeal and error ☞301, 719(1), 758(1)—Questions not presented in motion for new trial, by assignment of error in transcript, nor in brief, cannot be considered on appeal.

Questions raised in propositions not presented in appellant's motion for a new trial, nor contained in any assignment of error found in transcript, nor in appellant's brief, cannot be considered on appeal.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Action by Gibbs Bros. & Co. against the Kirby Lumber Company. From an adverse judgment, defendant appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

E. B. Pickett, Jr., of Liberty, and Dean & Humphrey, of Huntsville, for appellees.

O'QUINN, J. Originally this suit was one in trespass to try title to 158 acres of land, alleged to be a part of the Willis McWilkinson 484-acre survey in Liberty county, Texas, and for damages, brought by appellees against appellant and several other parties, and particularly against appellant, Kirby Lumber Company, for damages in the sum of $1,825, for the value of timber cut and removed from said 158 acres of land. All of the defendants in relation to the title to the land made default or were dismissed from the suit; they not being involved in the cutting of the timber. The cause was tried as to the plea of appellees against the defendants Kirby Lumber Company and H. O. Compton for damages for cutting and removing timber.

At the close of the evidence, appellant requested an instructed verdict in its favor, which was refused. The case was tried to a jury upon two special issues, in answer to which the jury found that the land in question was a part of the Willis McWilkinson survey, and that the timber cut and removed by appellant, Kirby Lumber Company, was worth $2.50 per 1,000 feet. Judgment was rendered against appellant for $1,490.40. Compton was a warrantor defendant, and judgment was in his favor. Motion for a new trial was overruled, and Kirby Lumber Company brings this appeal.

The following sketch, we think, is sufficient to illustrate the situation:

The rectangle A—B—Y—X represents the land in question. Appellant claims that this area is a part of the Chas. Smith survey. Appellees insist that it is a part of the McWilkinson survey. If it is a part of the Smith survey, judgment should have been for appellant. If it is a part of the McWilkinson survey, the judgment of the trial court was correct, and should be affirmed. The field notes

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the Smith survey, as shown by a photostatic copy of the original in the General Land Office, are:

"Survey for Chas. Smith of six hundred & forty acres of land situated in Liberty Co. on Luce's Bayou about 12 miles N.W. by W. from Liberty ~~Targenten's Creek~~ being the quantity of land to which he is entitled by virtue of certificate No. 641 issued by Charles Mason Acting Sec. of war for having escaped from Goliad under Fannin's Command, dated 29th day of Nov. 1838. Beginning on the North boundary line in the name of Wm H. B. Witham, at the S.E. cor. of W. McWilkinson's survey of a survey ~~made for Wm. E. Duncan.~~ Thence East 1900.8 vs. corner, stake ~~from~~ in Prairie from which a sweet gum (mkd C. S.) 12 in. dia. bears N. 65 W. 35 vs. Also a sweet gum (mkd X) 12 in. di. bears N. 69 W. 37.6 vs. Luce's Bayou Thence North 1125 vs. ~~Targenten's Creek~~ 6 vs. wide Co. S. W. at 1900.8 vs. corner Sweet Gum 15 in. di. from which a magnolia (mkd. C. S.) 8 in. di. bears S. 27 W. 3.8 vs. Also a White Oak (mkd X) 14 in. di. bears S. 20 W. 4.4 vs. Thence West 1900.8 vs. corner, stake from which a Red Oak (mkd C. S.) 12 in. di. bears S. 53 E. 9.8 vs. Also a Red Oak 8 in. di. (mkd X) bears S. 10 E. 9.8 vs. Thence Luce Bayou South 1706 vs. ~~Targenten Creek~~ Co. west, 1900.9 vs. place of beginning.
"Ewd. Hampton ⎱ C. C.
"Robt. Baker. ⎰
"H. B. Littlefield, Deputy Surveyor."

It was shown that changes and interlineations in the field notes above were made by Robert Creuzbauer, examining draftsman in the General Land Office, at the time the field notes were presented for patent, whose duty it was to pass on the field notes before they were passed to the patent clerk for issuance of patent, as testified by the Land Commissioner, J. T. Robison, "in order to make the records speak the truth."

The field notes of the Willis McWilkinson survey, as shown by the photostatic copy of the original in the General Land Office, are:

"Republic of Texas, County of Harris.
"Field notes of a survey of four hundred and eighty four acres, or 22,732,360 sq. vs. of land for Willis McWilkinson being a part of the land to which he is entitled by virtue of certificate Number five hundred and fifty two issued by the Board of Land Commissioners for Harris County, North of and adjoining a survey in the name of Wm. H. B. Witham West of and adjoining a survey in the name of C. Smith. Beginning at said Smith's S. W. corner a stake from which a White Oak mkd X 16 inch in dia. bears S. 32 E. 2 vs. dist. Also a White Oak mkd X 16 inch. in dia. bears N 32 W 2 vs. dist. Thence North 1900 varas with the west boundary line of said Smith survey to his N. W. corner a stake from which an oak mkd X and W bears North 10 varas dist. Thence west 1438 varas to a stake from which an oak mkd H bears West also an oak mkd W bears South. Thence South 1900 varas to W. H. B. Witham's N. W. corner it being Mary McGruder's N. E. corner, a stake from which a Magnolia 18 inch in dia. mk M. M. bears N 65 E. 5 varas dist.

Also an oak Md X 24 inch in dia. bears N 75 W. 4 varas dist. Thence East 1438 varas to the place of beginning.
"Hutchinson Pitman ⎱ Ch. C.
"John A. Ramsey ⎰
"James W. Henderson, D. Surveyor.
"Jan. the 17, 1846."

Patent to the Willis McWilkinson survey was issued on May 12, 1846, carrying the above field notes. Patent to the Chas. Smith survey was issued September 18, 1849, carrying the following field notes:

"In Liberty County on Luce's Bayou about 12 miles N. W. by W. from Liberty, by virtue of his Donation Warrant No. 641, issued by Chas. Mason Acgt. Secretary of War, on the 29th day of November, 1838, in consideration of his having escaped from Goliad under Fannin's Command. Beginning on the North boundary of a survey in the name of Wm. H. B. Witham at the S. E. corner of W. McWilkinson's survey. Thence E. nineteen hundred and 8/10 vrs. to a stake in Prairie from which a sweet gum marked C. S. bears N. 65 W. 35 varas, another marked X bears N 69 W. 37 6/10 varas. Thence North at 1125 varas, said Bayou, at nineteen hundred and 8/10 varas a sweet gum from which a magnolia marked C. S. bears S. 27 W. 3 8/10 varas, a white oak marked X bears s. 20 W. 4 4/10 varas. Thence west nineteen hundred and 8/10 varas to a stake from which a red oak marked C. S. bears S. 53 E. 9 8/10 varas, another marked X bears S 10 E. 9 8/10 varas. Thence South at 1706 varas said Bayou, at nineteen hundred and 8/10 varas the beginning."

The field notes of the Willis McWilkinson inclosed the amount of land called for, 484 acres. The field notes of the Charles Smith contains the amount of land called for, 640 acres.

The field notes of these surveys and the sketch of same show that the south lines of said surveys form one straight line. The south line of the McWilkinson calls to be 1,438 varas, and the south line of the Smith is called to be 1,900 varas. The actual distance between the southwest corner of the McWilkinson and the southeast corner of the Smith is 2,967 varas, a shortage of some 470 varas. The southeast corner of the Smith is definitely located on the ground by the sweet gum tree, marked "C. S." The southwest corner of the McWilkinson is definitely located on the ground by the magnolia tree, marked "M. M." The east line of the Smith is unquestioned. Likewise the west line of the McWilkinson. So there is a shortage of 158 acres in the areas of the two tracts, which, as above stated, is represented by the rectangle A—B—Y—X.

In answer to the first special issue, the jury found that the land in question was a part of the McWilkinson survey; in other words, that the line X—Y was the east line of the McWilkinson and the west line of the Smith. This finding is attacked by appellant as without support in the record. We do not deem

it necessary to set out or comment upon, the evidence, but will say that there is sufficient evidence to support the finding.

[1] But appellant says that where two adjoining surveys as here—the Smith to the east and the McWilkinson to the west—with their south lines on a straight line, and the southeast corner of the survey to the east and the southwest corner of the survey to the west located on the ground by undisputed evidence, and there is a shortage of 470 varas between such corners, for each survey to have its full quota of distance, the senior survey will get its full quota and the junior survey will lose, the senior survey being determined by the respective dates of the surveys, and insist that, as the Smith survey was located and surveyed before the McWilkinson, therefore the disputed land is a part of the Smith survey, and appellant should have had judgment.

[2] As an abstract proposition, the contention is correct, but to be so the survey first made must have been valid; that is, made according to law by some one authorized to make such survey. The Smith survey was made by H. B. Littlefield, a deputy surveyor of Harris county, on August 1, 1838, and the field notes recorded in the surveyors' records of Harris county and certified to by him as such surveyor December 22, 1838. The McWilkinson survey was made by James W. Henderson, a deputy surveyor of Harris county, on January 17, 1846. At each of said dates the land so surveyed was in Liberty county. The law then in force required that the land should be surveyed by a surveyor of the county in which the land was situated. Act Dec. 14, 1837, § 9; 1 Gammell's Laws, p. 1406; Paschal's Digest, art. 4522. Under the decisions of the Supreme Court, construing said law, it is very clear that the survey must have been made by the surveyor of the county in which the land was situated, and that the instant surveys, having been made by surveyors of another county, were nullities, and did not amount to an appropriation of the land under the certificates by virtue of which they were made. Linn v. Scott, 3 Tex. 67, 77, 78; Peacock v. Hammond, 6 Tex. 544, 550; Clark v. Goss, 12 Tex. 397, 62 Am. Dec. 531; Tabor v. Commissioner, 29 Tex. 509, 520; Griffith v. Rife, 72 Tex. 185, 190, 12 S. W. 168; Gulf, W. T. & P. R. Co. v. Cornell, 84 Tex. 541, 19 S. W. 703.

[3] However, the McWilkinson survey was patented May 12, 1846, carrying the same field notes as the original survey, thus conveying title to the land therein described, which, as we have said, included 484 acres, embracing the land in contest. The Smith survey was patented September 18, 1849. Though the original survey of the McWilkinson was illegal and void, the state later ratified and adopted this survey, as shown in issuing patent thereon. The same can be said of the Smith survey; but, as the McWilkinson was patented prior to the issuance of the patent to the Smith, the McWilkinson is the senior survey—its seniority being determined by the dates of the issuance of the patents, and not by the dates of the void surveys. Griffith v. Rife, 72 Tex. 185, 12 S. W. 168; Crow v. Reed, 25 Tex. Supp. 392. The McWilkinson being the senior survey, and there being a conflict between it and the Smith, it will prevail as to the conflict. In other words, the unauthorized location by Littlefield, deputy surveyor of Harris county, of the Chas. Smith survey in Liberty county, in 1838, did not give priority to such survey over the McWilkinson survey, which was located afterwards, but to which patent was issued more than three years before the issuance of the patent to the Smith survey.

[4] By its twelfth, thirteenth, and fourteenth propositions appellant undertakes to complain of the sufficiency of appellees' pleadings and the evidence adduced to support same to show (1) ownership in appellees of the timber alleged to have been cut and removed by appellant; (2) that said timber was cut without authority; (3) that said timber was converted by appellant; and (4) the value of said timber. Wherefore, it says, its motion for an instructed verdict should have been granted. Appellees except to said propositions, and object to our considering same, for in that the questions raised in said propositions were not presented in its motion for a new trial, nor are they contained in any assignment of error found in the transcript, nor in appellant's brief. These objections will have to be sustained. However, if we were permitted to consider the propositions, we think the pleadings of appellees, the evidence adduced in support of same, and an agreement offered in evidence and found in the record as to the matters in litigation, sufficient to support the judgment in the particulars complained.

A number of other interesting and well-briefed propositions and counter propositions are presented by the parties; but, as our above holdings dispose of the case, we pretermit a discussion of them.

From what we have said, it follows that the judgment should be affirmed; and it is so ordered.

Affirmed.