## KIRBY LUMBER CO. v. GIBBS BROS. & CO.
### (No. 989—5147.)

Commission of Appeals of Texas, Section B. March 13, 1929.

Andrews, Streetman, Logue & Mobley and E. J. Fountain, Jr., of Houston, for plaintiff in error.

Dean & Humphrey, of Huntsville, and E. B. Pickett, Jr., of Liberty, for defendant in error.

SPEER, J. The suit is one of trespass to try title to the 158 acres of land shown in the parallelogram A, B, Y, X and alleged to be a part of the Willis McWilkinson survey in Liberty county, and to recover damages for the value of timber cut and removed from the land. The defendant, Kirby Lumber Company, owned the Charles Smith survey on the east of the McWilkinson, and, from a judgment in favor of the plaintiffs, appealed to the Court of Civil Appeals, where the judgment of the trial court was affirmed. 3 S.W.(2d) 819.

On August 1, 1838, H. B. Littlefield, deputy surveyor of Harris (then Harrisburg) county, surveyed the Smith carrying the following field notes:

"Survey for Chas. Smith of six hundred and forty acres of land situated in Liberty Co. on Targenten's Creek, being the quantity of land to which he is entitled by virtue of certificate No. 641 issued by Chas. Mason, Acting Sec. of War, for having escaped from Goliad under Fannin's command, dated 29th day of Nov. 1838, beginning on the north boundary line of a survey made for Wm. B. Duncan, thence east 1900.8 vs corner, stake in Prairie from which a sweet gum (mkd C. S.) 12 in. dia. bears N. 65 W. 35 vs. Also a sweet gum (mkd X) 12 in. di. bears N. 69 W. 37.6 vs. Thence North 1125 vs. Targenten's Creek 6 vs. wide Co. S. W. at 1900.8 vs. corner Sweet Gum 15 in. di. from which a magnolia (mkd. C. S.) 8 in. di. bears S. 27 W. 3.8 vs. Also a White Oak (mkd. X) 14 in. di. bears S. 20 W. 4.4 vs. Thence West 1900.8 vs. corner, stake from which a Red Oak (Mkd. C. S.) 12 in. di. bears S. 53 E. 9.8 vs. Also a Red Oak 8 in. di. (Mkd. X) bears S. 10 E. 9.8 vs. Thence South 1706 vs. Targenten Creek Co. west, 1900.9 vs. place of beginning."

The survey was patented September 18, 1849, when the field notes were changed in the Land Office to call for Luce's Bayou, Wm. H. B. Witham, and the McWilkinson surveys.

On January 7, 1846, James W. Henderson, deputy surveyor, of the same county, surveyed the Willis McWilkinson with the following field notes:

"Republic of Texas, County of Harris.

"Field notes of a survey of four hundred and eighty four acres, or 22,732,360 sq. vs. of land for Willis McWilkinson being a part of the land to which he is entitled by virtue of certificate Number five Hundred and fifty two issued by the Board of Land Commissioners of Harris County, North of and

adjoining a survey in the name of Wm. H. B. Witham West of and adjoining a survey in the name of C. Smith. Beginning at said Smith's S. W. corner a stake from which a White Oak mkd X 16 inch in dia. bears S. 32 E. 2 vs. dist. Also a White Oak mkd. X 16 inch in dia. bears N. 32 W. 2 vs. dist. Thence North 1900 varas with the west boundary line of said Smith survey to his N. W. corner a stake from which an oak mkd X and W bears North 10 varas dist. Thence west 1438 varas to a stake from which an oak mkd H bears West also an oak mkd W bears South. Thence South 1900 varas to W. H. B. Witham's N. W. corner, it being Mary Mc-Gruders' N. E. corner, a stake from which a Magnolia 18 inch in dia. mk N. M. bears N. 65 E. 5 varas dist. Also an oak Md X 24 inch in dia. bears N. 75 W 4 varas dist. Thence East 1438 varas to the place of beginning.

"Hutchinson Pitman ⎱ Ch. C.
John A. Ransey ⎰

"James W. Henderson, D. Surveyor.
"Jan. the 7, 1846."

The Willis McWilkinson·was patented May 12, 1846, upon the same field notes.

It will be thus seen that the Charles Smith was senior in survey and junior in patent. The undisputed evidence shows that the southeast corner of the Smith, marked C, and the southwest corner of the McWilkinson, marked F, are well marked and identified corners on the ground. The parallelogram thus determined contains less than the aggregate acreage called for in the two surveys to the extent of the acreage in the disputed strip. It therefore becomes a question of determining where lies the shortage.

■ The Smith being the senior survey and the McWilkinson calling to adjoin that survey on the west and to begin at its southwest corner, that corner will control the call for distance to the west (reversed) 1,438 varas, and locates the well-defined corner, F. It is not a question of conflict or overlapping of surveys. It is a question of conflict in the McWilkinson between a call for distance and an artificial object. There can be no possible overlapping of acreage where the junior survey expressly calls to begin at the senior. Where the senior line is established, the junior begins and the calls for distance and acreage of the junior must yield accordingly.

A call for an adjoinder is like a call for a natural or artificial object, and any conflicting call for course, distance, or acreage, and the like, must yield. Couch v. Tex. & Pac. Ry. Co., 99 Tex. 464, 90 S. W. 860; Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445; Ruth v. Carter-Kelly Lumber Co. (Tex. Civ. App.) 286 S. W. 322; Titterington v. Trees, 78 Tex. 567, 14 S. W. 692; Boon v. Hunter, 62 Tex. 582; Chapman v. Hamblet, 100 Me. 454, 62 A. 215; Curtis v. Francis, 63 Mass. (9 Cush.) 438; Percival v. Chase, 182 Mass. 371, 65 N. E. 800; Fincannon v. Sudderth, 140 N. C. 246, 52 S. E. 579; Whitaker v. Cover, 140 N. C. 280, 52 S. E. 581; Airey v. Kunkle, 7 Pa. Super. Ct. 112; Miller v. Holt, 47 W. Va. 7, 34 S. E. 956.

■ This rule of priority of surveys is not questioned by defendant in error, but it is denied that the rule is applicable to this case upon the contention that the original survey of both tracts involved was made without any authority of law and the same was therefore void, the precise point being that the surveyor acted beyond his jurisdiction. The plaintiff in error combats that proposition, and insists that the surveys were not void, but that the acts of the deputy surveyor were within his statutory authority. Be that as it may, we are of the opinion the matter is entirely immaterial. It may be conceded, as it must be, that if the deputy surveyor, surveying the Smith in 1838, had no authority to act, then his attempted act was invalid and the survey was a nullity so far as it created any rights as an appropriation of the public domain. We may also admit, for the purpose of decision, that the deputy surveyor did act without authority, and that the survey was thus void. Non sequitur, that the call in the subsequent patent to the McWilkinson (senior, however, to the patent to the Smith) was void. The ineffectiveness of the survey to appropriate the land or to create any rights whatever in Charles Smith or his heirs does not affect the question of the beginning corner and east boundary line of the McWilkinson. That is determined by the calls of the field notes, as contained in the patent. The primary purpose of every inquiry like this is to ascertain where on the ground the surveyor actually laid the land, or where the grantor actually intended it to be located when there was no actual survey. To determine this all-important matter any call sufficiently clear and definite to determine location will be observed. Where that call, as here, is for an adjoining survey, it can make no difference that such survey is for any one reason invalid. It is not a question of validity of the survey called for, but rather one of the corner or line of such so-called survey. The beginning point is not a legal concept, but a physical object. Whether the survey this called for is void or valid, or the line thereof is legal or illegal, is of no importance. It may be the act of an individual, not a surveyor at all. It is a question of where the surveyor or grantor did place, or meant to place, the subsequent tract. Welder v. Carroll, 29 Tex. 318.

The rule above discussed applies to and includes, necessarily, those senior surveys whose boundaries may be established by any of the recognized rules of construction of surveys, and includes corners and lines deter-

mined by course and distance, as well as those identified by natural or artificial objects on the ground. In this case the southwest corner of the Smith is determined, not by calls for objects, for there are none, but it is determined by course and distance from its southeast corner, which is thoroughly identified and located on the ground. It is 1,900.8 varas west from the established southeast corner of the Smith. No greater particularity or different rule obtains in thus fixing the beginning corner for a junior survey than exists for establishing the corner and lines of the senior survey. The two methods are identical.

■ The defendants requested a summary instruction in the trial court and have preserved their assignment to its overruling, to the present time. The view we have taken of the case requires a holding that such instruction should have been given. Counsel for defendants in error insist that the jury, having located the boundary line, under instruction from the court, finding that the disputed strip was a part of the McWilkinson, and that there being evidence to support such findings, presents a question of fact and not one of law. But we are of the opinion there was no question of fact to be submitted, and the location of the McWilkinson is to be determined, as a matter of law, from the undisputed evidence as we have indicated.

We therefore recommend that the judgments of the Court of Civil Appeals and of the trial court be reversed, and that judgment be here rendered that defendants in error take nothing as against plaintiffs in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and the district court are both reversed, and judgment rendered as recommended by the Commission of Appeals.