Booth, Judge,
delivered the opinion of the court:
The contract furnishing the basis of this suit provided in part as follows:
“ Adjustment of wages. — If, after the date of the contract, there shall be any increase in the rates of wages prevailing in the vicinity of a place where work contemplated by the contract is done that shall necessitate payment by the contractor on account of labor employed exclusively upon such work of rates of wages in excess of those prevailing in such vicinity at the date of the contract, he shall receive additional compensation in a sum equal to one-half the amount of the increase in the rates of wages so required to be paid by him over the rates prevailing at the date of the contract: Provided, that in determining such additional compensation wages paid by the contractor at any time during the continuance of the contract in excess of the rates prevailing in the vicinity at the time of such payment shall be disregarded to the extent of such excess: and provided further, that any increase over wage rates prevailing at the date of the contract before being granted by the contractor shall be notified to and approved in writing by the Bureau of Yards and Docks. For the purposes of this paragraph, rates of wages prevailing in the vicinity of a place where work contemplated by the contract is done shall be understood to mean the established rates of wages in the nearest navy yard or station, if there be one within 50 miles of such place, or, if there be none within that distance, the rates of wages paid under a well-established wage scale, if any, in such vicinity, or, if there be none, such reasonable rates of wages as may be determined by the Navy Department, Bureau of Yards and Docks. The burden shall be upon the contractor of establishing to the complete satisfaction of the Bureau of Yards and Docks all facts upon which any claim for additional compensation hereunder shall rest, and all questions growing-out of any such claim shall be determined by the Navy *222 Department, Bureau of Yards and Docks, whose decision thereon shall be final and conclusive. Determination of such claims shall be deferred until the completion of the contract.”
The plaintiff stated its claim for increase in wages arising under this provision and fixed the amount at $15,897.92, $4,825.60 of this total amount representing cash outlay for subsistence of the men employed by the plaintiff in the performance of the contract. When the claim reached the Bureau of Yards and Docks the item of $4,825.60 was disallowed and $10,572.32 allowed. The bureau determined that subsistence furnished was not wages paid. We need not discuss the merits of the disallowance now sued for. The clause under which the allowance and disallowance were authorized provided that the board’s decision in this respect should be final. The authorities sustaining the conclusiveness of the board’s decision are too many to warrant citation. Yale & Towne Mfg. Co. v. United States, 58 C. Cls. 633.
Subsequently an additional claim arose under this same clause of the contract. The facts are these: July 31, 1918, the plaintiff sublet a part of the work under its contract to James Stewart & Company, and with the Stewart Company the plaintiff agreed that any sum allowed for increase of wages as per plaintiff’s contract with the Government would be paid by the plaintiff to the Stewart Company, and if the Government made no allowance the plaintiff was to pay nothing to the Stewart Company, both parties realizing that the question of an allowance depended upon the final action of the Bureau of Yards and Docks. The James Stewart Company performed its subcontract; the work was done and was satisfactory to the Government. When the contract was completed, the increase in wages, accurately kept, was claimed by the plaintiff, and the amount stated was approved by the public-works officer and finally transmitted to the Bureau of Yards and Docks for final action. The Bureau of Yards and Docks in its decision uses this language, found in Finding XXI:
“ The bureau is of the opinion that the general contractor is entitled to reimbursement on account of wage increases of subcontractors only after he has himself actually reimbursed the subcontractor, and then only to the extent of one-half the amount paid the subcontractor.”
*223 Again, on September 9,1920, tbe bureau found as follows:
“ Subject: Contract No. 2690, December 12, 1917, for dredging and filling at naval operating base, Hampton Eoads, Norfolk, Va.
“ Gentlemen : Your letter dated July 2, recently delivered to the bureau, with reference to your claim for increased-wage adjustment under contract No. 2690, has had consideration.
“ The stand heretofore taken by the bureau in this matter, that under the terms of paragraph 2 of specification No. 2690 you are entitled, on account of the wage increase paid by your subcontractor, to but one-half the amount in which you are required .to, and do, reimburse your subcontractor for such increase, is believed to be proper, and it is therefore confirmed.”
In its final analysis the decision of the bureau was a refusal to allow what the plaintiff’s contract with the Government expressly entitled the plaintiff to receive, because the plaintiff had not shown payment by it to its subcontractor. The bureau had no jurisdiction over the contract between the plaintiff and its subcontractor. It was no affair of the bureau’s whatever with respect to this claim. The plaintiff was within its rights in subcontracting a portion of the work, and no complaint as to performance of the work was lodged against the plaintiff or the subcontractor. The Government looked to the plaintiff for the performance of the subcontractor’s contract, and it would create a most unusual situation that a sum admittedly due under the plaintiff’s contract may be legally withheld from it on the pretense that the plaintiff had not settled with or discharged its obligations to its subcontractor. The payment to the plaintiff of the amount claimed discharged the Government from its liability under the contract. The subcontractor could not sue for the amount, and the bureau manifestly exceeded its jurisdiction in disallowing the claim for the reasons stated. Merritt v. United States, 267 U. S. 338.
It is difficult to comprehend by what supposed authority the bureau was acting when it said in effect, “ Yes, the amount you claim is justly due, but we decline to pay it because you have not shown us that you have paid your subcontractor the amount claimed.” The comprehensive terms conferring jurisdiction on the bureau with respect to the *224 question of increase in wages are not sufficient to warrant the exercising of an authority over matters outside the contract between the plaintiff and the Government. The plaintiff, in its own name, presented the claim for increase, and while it acted honestly and aboveboard in stating the terms of its: contract with the subcontractor, it was under no legal obligation to do this. Having presented its claim in its own name, the plaintiff was entitled to consideration under its contract, and the jurisdiction of the bureau was conferred upon it by the terms of the plaintiff’s contract and not the subcontract. The Government having covenanted to meet one-half the increase in wages due to war conditions assuredly may not escape observation of the obligation by requiring the contractor to show before the allowance that he had discharged his indebtedness to a subcontractor engaged by the contractor to do what the latter was to do. The bureau had nothing to do with the payment of the allowance; its authority was limited to finding the amount due and certifying the same. It is easy to forecast the financial ruin of a Government contractor if the rule is to be established that he may not receive amounts due from the Government under his contract until he establishes to the satisfaction of the Government that he has paid his subcontractor all he owes him. As between the plaintiff and the Government under the existing contract, the bureau had ample authority to pass upon and allow or disallow the claim for increase in wages. This it did do and found no objection, predicating its disallowance upon a matter outside its jurisdiction. We think the item is allowable, and judgment for the amount will be awarded. Stout, Hall & Bangs v. United States, 27 C. Cls. 885.
The final controversy revolves about a section of the work to be done, known as area “ D.” This area the plaintiff was to fill in sixty calendar days and receive therefor twenty-seven cents per cubic yard. The Government under the contract had the direction of the work. The plaintiff’s contract was dated December 12, 1917. The plaintiff was not asked, nor was any suggestion made to it, to proceed with the filing of area “ D ” until May 28, 1919, over a year and five months after the date of the contract, and over eight months *225 after the time fixed by the contract for the entire completion of area “D.” The reason for this delay is perfectly obvious. The Government wanted to and did utilize area “ D.” As a matter of fact, it would have seriously discommoded the Government if the plaintiff had filled the area, and the plaintiff could not get in there to do it properly. During the war the Government erected houses on stilts within the area, honeycombed it with sidewalks to and from the structures erected; stored coal, and otherwise utilized the space as war necessities impelled. It is no exaggeration to say that the Government had no desire to have the area filled during this period of delay. When, therefore, the plaintiff was ordered to proceed with the filling of the area, it demurred to the order, asserting that, in view of the long delay, the increase in wages and the apparent difficulties to be encountered because of what the Government had done, it was entitled to increase in its compensation. Plaintiff finally offered to do the work at actual cost and to lose its profit. The Government declined to accede to either of the plaintiff’s requests. Instead, it employed James Stewart & Company to use one of its own dredges and paid it, not by the c'ubic yard, but so much per diem, thereafter deducting the excess cost of $4,825.60 from amounts due the plaintiff under its contracts. We should have said that the plaintiff refused to proceed under its contract in area “ D.” We think this item clearly allowable. When the Government deviated from the terms and conditions of the plaintiff’s contract and engaged another to do the contract work on an entirely different basis from the one fixed in the primary agreement, it can not charge the difference to the alleged defaulting contractor. Cal. Bridge & Con. Co. v. United States, 50 C. Cls. 40; United States v. Axman, 234 U. S. 36.
Area “ D ” was not included in the triparty contract set out in Finding VI. A map attached to the contract expressly so states. The finding discloses that the plaintiff was not relieved by the triparty contract from all work to be done under its original contract, and area “ D ” was to be filled by the plaintiff under its own contract.
Again, if the Government prevents a contractor from doing what it agrees to do, the Government can not insist upon *226 tbe performance of the contract; the contractor has an option — he may, if he choose, abandon the contract. Anvil Mining Co. v. Humble, 153 U. S. 540; United States v. Behan, 110 U. S. 338.
Judgment should be entered for the plaintiff for the sum of $14,012.34. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.
Hat, Judge, dissents.