Booth, Chief Justice,
delivered the opinion of the court: The plaintiff, responding to public advertisements for bids to furnish certain specified merchandise for the Army .■and Navy, was the lowest bidder therefor, and did on the dates hereinafter mentioned enter into separate contracts to supply the same. The first contract was with the Army, and by its terms the plaintiff agreed to furnish five distinct items of cotton goods of a specified character and deliver the same in accord with a schedule of deliveries set out in the -contract. The plaintiff concedes that deliveries were delayed beyond the time limit prescribed as to four of the items, contending, however, that the period of delay upon which liquidated damages were assessed was erroneously found by the defendant to be 281 days instead of 98, resulting in an overassessment of liquidated damages of $915.00 for which amount, under this contract, plaintiff asks judgment.
The contract was dated August 5, 1921. The plaintiff •agreed as to item one to furnish the goods and complete -delivery thereof by November 10, 1921; this was not done, •and an admitted delay of 70 days occurred. The defendant assessed liquidated damages at the rate of $5 per day, and thereafter withheld from sums due the plaintiff the total amount of $350.00. This precise situation obtained as to items 2, 3 and 4, except as to the period of delay. As to item 2 the delay was 86 days, for item 3 it was 68 days, and item 4, 57 days, and in each instance liquidated damages were assessed at the contract rate of $5 a day. The total amount assessed and withheld by the defendant was $1,405.
*674 Paragraph 16 of the contract provided as follows:
“ 16. Liquidated damages. — The time herein specified for the complete performance of this contract being one of material consideration inducing its execution by the Government, and the amount of damage which the Government will sustain in case of the failure of the contractor to make-deliveries of articles or complete the work herein contracted for within the time specified being difficult of ascertainment,, the parties hereto have carefully estimated the probable damages which the Government will suffer by reason of such delay, and it is agreed that in the event of such delay the contractor shall pay to the United States as liquidated damages and not as a penalty the amounts hereinafter stated;: and it is agreed that such sums may be deducted from any payments to be made contractor, if the contractor shall be in unexcused default in the delivery of articles or the completion of the work in strict accordance with the date set for completion or the schedule of deliveries set forth herein.. Such deductions as a liquidation of damages shall be as follows:
“ The sum of five dollars ($5.00) for each and every day’s delay beyond the rate specified herein for completion of deliveries.
“ When one or more parts of an article or articles of a set or lot are not delivered on the proper date, the complete article or the entire set or lot, as the case may be, shall be-classed and considered as undelivered for the purpose of' calculating liquidated damages.”
The plaintiff insists that the contract is to be considered as an entirety, and that delays in delivery should run upon all items concurrently, i.e., that the total period of delay in performing the contract as a whole constitutes the basis-for reckoning liquidated damages and not the delay period, as to each item. If plaintiff’s position is tenable the total period of delay would be 98 days, and not 281.
Plaintiff’s argument is rested upon a premise that the-contract provision as to liquidated damages is ambiguous,, thus exacting a judicial construction, and that the rule of law applicable in such a case is to construe the same- “ strongly against the party who prepared the paper,” i.e.,. the defendant.
Paragraph 16 is, we think, plain and expressive. The legal effect of such provisions has been established by in *675 numerable decisions of this and the Supreme Court. The ambiguity which the plaintiff seeks to translate into it is not to be found in the language used, if any exists. The contract as a whole reflects it in what might under the facts have been the real intention of the parties as to the assessment of liquidated damages.
The plaintiff obligated himself to furnish 469,250 yards of textiles, segregated into five items, each specifying in detail the quality, quantity, and varying prices to be paid, and setting out the precise dates upon which each item was to be delivered. There is no other time limit for performance other than the ones specified as to eách item to be furnished, and to sustain the plaintiff’s case we would be required to ignore the express terms of the contract as to dates for delivery of each item and write into the contract a time limit provision predicated upon conjecture and inferences. This we cannot do. Laidlaw-Dunn-Gordon Co. v. United States, 47 C.Cls 271.
Paragraph 16 of the contract explicitly sets forth that liquidated damages at the rate of five dollars per day will accrue “ for each and every day’s delay ” beyond the date specified for delivery. What the plaintiff agreed to do was limited as to time and to quantity and quality of goods to be delivered. The undertaking was segregated, and we think it manifest from the terms of the contract that it was the intention of the parties, known at the time, that delivery of each item on time was of the essence of the contract.
On January 20, 1927, the plaintiff entered into his second contract with the Army Air Service. October 22, 1926, the Air Corps of the War Department issued an advertisement soliciting bids for furnishing and delivering two types of balloon cloth, one type known as “KK” and the other as “ LL ” cloth. This advertisement specified the maximum weight per square yard, the maximum and minimum width,, the tensile strength per inch, the minimum threads per inch in the warp, and the yarn sizes of the warp of the cloths-The specifications in each instance were minute and complete, for the cloth to be furnished had to be manufactured as it was not a commercial one in any respect.
*676 The plaintiff received the advertisement and immediately ■entered into negotiations with American and English textile mills for the manufacture of the cloth. He obtained a •quotation from an English mill, and following its receipt entered his bid for furnishing 17,000 yards of the “ LL ” and 10,000 yards of the “ KK ” cloth, agreeing to furnish the “ LL ” cloth for $0.4455 per yard and the “ KK ” cloth for $0.5115 per yard. His bid was accepted and a written ■contract was executed.
As soon as the plaintiff received notice that the contract had been awarded to him an order was placed with the mill in England to manufacture the cloth according to the .specifications of the contract. Later it developed that the cloth could not be manufactured in accord with the specifications, i.e., that if the manufacturer was compelled to manufacture the cloth without deviation from the express specifications as to weights and figures, the same were so proportioned that the result was absolutely unattainable. If the prescribed yarn sizes were to be used the specified weight was unattainable, and a variance in threads both ways would result in a reduction of breaking strength, so that nothing was left for the English mill to do but advise the plaintiff that the cloth could not be manufactured and meet the detailed specifications exacted.
The plaintiff took up the matter with the department, pointed out the impossibility of procuring the cloth, and suggested and offered a substitute cloth. The department replied that the specifications were correct, that similar material had previous^ been purchased under these specifications, .and conformed thereto, whereupon the plaintiff procured from the department samples of the cloth previously furnished, had these samples tested, and conclusively established that the department was in error in stating that it conformed to the specifications set forth in plaintiff’s contract. A distinct variation was demonstrated in more than one respect.
In April 1927 the plaintiff informed the department as to the impossibility of manufacturing the cloth in exact ■conformity with the specifications, and sought information *677 as to whether it would or would not be possible to reach an agreement to have the specifications revised in such a way as to enable the cloth to be produced. April 18, 1927, the department in a written communication advised the plaintiff' that the yarn sizes specified were primarily intended to give manufacturers some idea as to the sizes of yarns necessary in manufacturing balloon cloth and that in view of the instant as well as previous misunderstandings in this regard the specifications would be revised by “.eliminating the yarn sizes tabulated,” and an order deleting the specifications as to yarn sizes was forwarded to the plaintiff.
The plaintiff upon receipt of the deleted specifications set about to procure the manufacture of the same, and found it impossible to procure the cloth at the contract prices and at once notified the department that compliance with the altered agreement could not be had unless the consideration was increased to five cents a yard as to the “ LL ” cloth and eight cents a yard as to the “ KK ” cloth.
The department refused to increase the price. The plaintiff' declined to deliver at the original contract price, and thereafter the department terminated the contract, charging the plaintiff with having defaulted in deliveries, and at once entered into negotiations with the next lowest bidders under the original advertisement, finally resulting in a new contract with the Warwick Mills, to whom the department paid a total sum of $19,325.00, or $6,636.50 more than was to have-been paid the plaintiff, and this sum was later charged against sums due the plaintiff on other contracts by the General Accounting Office, and payment withheld.
The record establishes the fact that under the specifications of the contract the cloth could not be manufactured and comply with the same. It is true the department treated this fact as a nonessential one and notified the plaintiff that specific yarn sizes were advisory only and not binding. There was nothing in the contract authorizing the plaintiff' to indulge this inference. The plaintiff could not ignore the specifications or depart therefrom without encountering the hazard of having his pay held up or perhaps receiving-an order of nonacceptance of the cloth. The plaintiff pursued *678 the only course open to him and that was to seek a new .agreement, and the department by tendering one, at least to the extent of the changes made, conceded error in the original specifications. That this error was a material one is .seemingly indicated by the greatly increased price finally paid for the cloth. The defendant’s attorney suggests that this difference in price may have been the motivating cause of plaintiff’s refusal to deliver the cloth at the original contract price, and that he was resorting to this means to escape a loss due to an improvident contract. The above statement might be justified if the record sustained the inference; on the contrary, however, it is positively proven that had the department agreed to a new and modified contract in accord with plaintiff’s proposition, the Government would have saved the difference between what it did pay, viz, $6,636.50, and $1,650.00, plaintiff’s increased price, or the sum of $4,986.50, which was paid in excess of the amount for which plaintiff agreed to furnish the cloth. This fact we think precludes the inference suggested in the defendant’s brief and also indicates forcibly that under the new specifications the production of the cloth involved a substantial increase in •cost. The legal argument interposed to defeat this item in suit is put upon the premise that the ordered change in the specifications of the original contract was insignificant and of such a character as to preclude the plaintiff from refusing to perform; that the plaintiff requested the change, the ■defendant acceded to the request, and he should have gone ahead and completed deliveries.
The findings of the commissioner as to this item are not excepted to by the defendant. They are sustained by the •oral and documentary evidence in the record. The plaintiff was prepared and could have delivered the cloth under the original contract if the same could possibly have been produced according to the specifications. That cloth of the character specified could not and never had been produced ■appears from the evidence. The mistake which occasioned this controversy is due to the department and not the plaintiff, and obviously as a matter of law the defendant could not impose upon the plaintiff a new set of specifications without his acceptance of the same. Contracts can not be *679 legally altered to the disadvantage of one party by the act ■of the other until the change becomes mutual. The defendant has never exacted the performance of the original con-bract according to its terms, nor has any cloth ever been procured by the defendant according to the same. The •cloth procured was manufactured in accord with specifications differing in more than one material respect from the ■cloth specified in the original contract, and at a greatly enhanced cost. As a matter of fact, the defendant, when the reletting occurred, waived two distinct specifications -appearing in the original contract and accepted cloth which under plaintiff’s contract would not have been acceptable.
Balloon cloth was an exceptional textile. The department .so regarded it; weight, texture, and tensile strength were important factors and it is a fair inference from the facts that deviations from specifications which bring about the production of a cloth of a different character in the way enumerated, are substantial in their nature, especially so when the new specifications develop a cloth which could not have been produced by the old ones.
It has long since been held that where the Government 'by reason of a claimed default in the performance of a contract elects under its terms to relet the contract and charge the increased cost, if any, to the defaulting contractor, such -charge may not be sustained if in the reletting there is a material or substantial departure from the original contract terms. American Bonding & Trust Co. v. Gibson County, 127 Fed. 671; United States v. Axman, 234 U.S. 36; California Bridge Co. v. United States, 245 U.S. 337. We think that under this item the plaintiff is entitled to ■.recover.
Finding XXI depicts the situation as to the contract for jpillow cases, entered into by the plaintiff and defendant November 19, 1927. The issue is one of fact and the court ■finds the facts in the above finding.
The plaintiff will be awarded a judgment for $6,636.50. Tt is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; ;and Green, Judge, concur.