## SCHWARTZ v. UNITED STATES.
### No. 45800.

Court of Claims.
May 6, 1946.

Fred W. Shields, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

James J. Sweeney, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

Defendant advertised for bids early in 1942 for furnishing and installing an inter-office communication system in the Office of the Port Director, Third Naval District at New York. Plaintiff's bid of $935 for a Bogen Communo Phone Installation, an interoffice communication loud speaker system offered by it, was accepted and on March 17, 1942, a contract on the Standard Form 23 for supplies was executed. E. N. Dudgeon, of the Navy Purchasing Office at New York, signed the contract on behalf of defendant, as contracting officer. No performance bond was required. The specification provided in part that—

"The Interoffice communication system shall consist of 19 'Master' type units. Equipment shall be designed to operate from a power source of 120 Volts D.C. Suitable filters shall be incorporated to reduce to a minimum any disturbances present in the power supply.

"It shall be possible for any station to call and talk with any other station in the circuit. It shall be possible also, for a number of conversations to be held simultaneously without interference with each other. There will be 19 stations. These stations shall be located at 19 points indicated on the building plant submitted for an estimate."

Two bids other than plaintiff's were submitted, one for $1,816 by the Lektra Laboratories, Inc., for a loud speaker system operated by the building current, and by Dictograph Sales Corp. for $2,757.31 for a

system that operated on the telephone principle and on batteries. Plaintiff installed its communication system about April 24, and when it was put in operation before it had been formally accepted a dispute arose concerning the operativeness and proper functioning of the system (findings 4 and 5). As a result the system as installed by plaintiff was finally rejected June 3, 1942, and a readvertisement for bids was issued for an interoffice communication system under the original specification. Four bids ranging from $1,816 to $2,973.50 were submitted and the bid of $2,757.31, less a discount of 1 percent (which was the third lowest) of the Dictograph Sales Corp., under specifications differing substantially and materially from those of plaintiff's contract, was accepted (findings 6-8). Plaintiff's contract as executed by the parties called for a system operated on a loud speaker principle and powered by the building current. This system was more noisy than a battery operated system which also operated similarly to the telephone, and such electric current system was useless when the building current should be off, as was sometime the case during a "blackout" in 1942. The accepted bid of the Dictograph Sales Corp., was in the exact amount and for the specific system offered in its original bid prior to the making of the contract for the type of communication system offered by plaintiff and other bidders. The difference in price of $1,794.74 between plaintiff's bid of $935 and $2,729.74, the net contract price paid for the Dictograph system, was charged to and collected from plaintiff under the claimed authority of Article 4 of plaintiff's contract which provided, in part, that "If the contractor fails * * * to proceed promptly with the replacement and/or correction thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the contractor the excess cost occasioned the Government thereby." Payment of this amount of $1,794.74 under Article 4 of plaintiff's contract was demanded by the contracting officer July 17. Plaintiff protested this action and did not make the payment demanded until December 23, 1942, after the receipt of the letter of November 19 (finding 11), signed by Admiral W. B. Young, Paymaster General, and George F. Yoran, Chief of the Bureau of Supplies and Accounts, Navy Department, demanding payment of the amount mentioned as the excess cost due under the contract. This demand was coupled with a threat to deny plaintiff the privilege of bidding on future contracts by applying the provision of Section 3722, Revised Statutes, 34 U.S.C.A. § 572, unless payment of the $1,794.74 was promptly made. Thereupon plaintiff paid the amount under written protest in which it reserved the right to bring suit therefor. This payment was accepted and receipted for on December 23, 1942, on behalf of the contracting officer (who is referred to in the record as the "Officer in Charge" of the Navy Purchasing office at New York), as the "Excess in cost in the amount of $1,794.74 resulting from purchase against account of Sun Radio Company under Contract N140s-99641, requisition NSA/183/42/Hdqtrs/3ND." The contract and requisition mentioned were the documents which constituted plaintiff's contract for the type of system offered by it. The contracting officer's receipt of December 23, further stated that "Contractor's check in the amount of $1,794.74 in payment of the excess costs due under the subject contract has this day been received and forwarded to the Disbursing Officer, Third Naval District, New York, for deposit." The amount was deposited in the Treasury to the credit of miscellaneous receipts on December 29, 1942.

While plaintiff does not expressly abandon its claim in the petition for the contract price of $935, which defendant refused to pay, this item is not argued in the brief and the statement therein of the issue presented does not include such item. On the evidence recovery of this item could not be allowed. While there is substantial justification in the evidence for the conclusion that one of the main reasons for the rejection of the Bogen Communication Installation called for by the contract and furnished and installed by plaintiff was that when it was put in use it was unavoidably more noisy than the

Port Director desired due to electric current disturbances and the fact that it operated on the loud speaker principle, there was no finding that such noises had not been reduced to a minimum for that type of system, which was all the contract required. However, this is not sufficient to justify recovery. The contracting officer found that the system did not properly and satisfactorily operate for other reasons. This finding has not been overcome by plaintiff's proof and no appeal was taken from the findings made.

The claim for the item of $1,794.74, demanded and collected by the contracting officer as being due the Government under the terms of Article 4 of the contract, presents a different question as to which the contracting officer's decision was not final under Article 15 of the contract. That question is whether, as a matter of law, plaintiff is entitled to recover this amount because the contracting officer, in reletting the contract for an interoffice communication system, materially and substantially departed from the requirements of his contract with plaintiff in this regard. Defendant admits that there was such a material and substantial departure and that there were "Material and substantial differences between the battery operated equipment purchased from the Dictograph Sales Corporation and the interoffice communication system described in the [contract] specifications and furnished by the plaintiff." In view of these facts it must be held that defendant breached its contract with plaintiff when it relet the contract for an entirely different system and demanded and collected the amount of $1,794.74, under Article 4, as excess cost, occasioned by completion of the original contract. United States v. Axman, 234 U.S. 36, 34 S.Ct. 736, 58 L.Ed. 1198; United States v. United States Fidelity and Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696; Rosenberg v. United States, 76 Ct.Cl. 662, 679; George Leary Construction Co. v. United States, 63 Ct.Cl. 206, 225. In the Rosenberg case, supra, this court said:

"It has long since been held that where the Government by reason of a claimed default in the performance of a contract elects under its terms to relet the contract and charge the increased cost, if any, to the defaulting contractor, such charge may not be sustained if in the reletting there is a material or substantial departure from the original contract terms. American Bonding & Trust Co. v. Gibson County, 6 Cir., 127 F. 671; United States v. Axman, 234 U.S. 36 [34 S.Ct. 736, 58 L.Ed. 1198]; California Bridge [& Construction] Co. v. United States, 245 U.S. 337 [38 S.Ct. 91, 62 L.Ed. 332]."

Defendant argues, however, that the court is without jurisdiction of plaintiff's claim under Section 145 of the Judicial Code, Title 28 U.S.C.A. § 250, because it is not founded upon an express contract or one implied in fact. This argument cannot be sustained. The claim is founded upon and grows out of the written contract of March 17, 1942, with plaintiff. Defendant impliedly agreed in that contract not to materially depart from the terms thereof in reletting it or in purchasing the supplies in the market. The claim is therefore one which arose from the breach of plaintiff's contract under Section 145, supra. We can find no merit in defendant's argument that plaintiff should not be allowed to recover because it paid the amount in question under protest when it probably was not legally obligated to do so.

Plaintiff is entitled to recover, and judgment for $1,794.74 will be entered in its favor. It is so ordered.

WHALEY, Chief Justice, and JONES and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.